IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KEITH W. MILLER, ) | |
| ) | CASE NO. 7:19cv00641 |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TRACY GAYLOR, *et al.*, ) | By:  Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Keith W. Miller ("Miller"), a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that various state officials violated his constitutional rights related to the revocation of his parole in 2018. This matter is currently before the court on Defendants' motion for summary judgment.[1] After a thorough review of the record, the court concludes that Miller has failed to establish genuine issues of material fact in support of his claims and will therefore grant the motion.

I. BACKGROUND

Miller entered state custody on various criminal prison sentences in 1995.[2] On August 10, 2012, he was released on mandatory parole with a minimum expiration date of August 10,

---

[1] The amended complaint (ECF No. 11) named as defendants two probation officers, Tracy Gaylor and Katherine Layne-Ayers; A. Lincoln James, identified as a parole board member; and "any unknown parole board members." After an assistant attorney general waived service for all defendants except the latter, the court directed Miller to provide sufficient identification to allow service of process on the individual board members, which he did. It is undisputed that Adrianne L. Bennett, Jean Cunningham, Sherman P. Lea, Sr., and Linda L. Bryant all served on the parole board during October and November 2018 when the challenged revocation proceedings occurred. Accordingly, the court allowed Miller to amend to substitute these four persons as defendants in place of the unknown board members. Gaylor, Layne-Ayers, James, Bennett, Cunningham, Lea, and Bryant (collectively "Defendants") have joined in the pending motion for summary judgment (ECF No. 40).

[2] This summary of facts related to Miller's claims, taken from the parties' pleadings and attachments, is undisputed except where otherwise noted. In support of the Memorandum in Support of Summary Judgment,

2022. Tracy Gaylor ("Gaylor"), a probation officer for the Virginia Department of Corrections ("VDOC") Probation and Parole, was Miller's supervising probation officer in 2018, when the events giving rise to this lawsuit occurred. Probation Officer Katherine Layne-Ayers ("Layne-Ayers") was the supervising officer for Leechelle Harvey ("Harvey"), an acquaintance of Miller, in 2018.[3]

On May 29, 2018, Gaylor learned that Miller had been arrested on May 24, 2018, for stalking and had been released on bond the following day. On June 1, Gaylor met with Miller about the charge. Miller described the charge as "bogus" and claimed that the victim, Harvey, had repeatedly asked him for money to buy drugs and accused him of stalking when he refused. (Gaylor Aff. ¶ 6.) Miller told Gaylor that although he and Harvey were in a sexual relationship, it was not a committed, romantic one. Gaylor instructed Miller to have no further contact with Harvey. But less than a month later, on June 20, Miller admitted to Gaylor that he had been paying Harvey for sex, despite Gaylor's admonition the month prior to have no further contact with Harvey.

On June 26, 2018, parole officials charged Miller with violating his parole based on his admission to illegal activities (i.e., solicitation of prostitution) and his disregard for parole conditions—specifically, Gaylor's instruction to have no contact with Harvey. A preliminary parole hearing was conducted on July 9. The hearing officer found probable cause that Miller had violated several parole conditions and recommended the imposition of agreed sanctions

---

Defendants offer affidavits from Tonya D. Chapman, Chairman of the Virginia Parole Board ("Chapman Aff.") (ECF No. 41-1), and T. M. Gaylor, Probation Officer ("Gaylor Aff.") (ECF No. 41-2).

[3] Harvey's first name appears with different spellings in the parties' submissions. The court will utilize the spelling initialized by Miller: Leechelle. (*See* Chapman Aff. Encl. A, at 8 [ECF No. 41-1].)

instead of referring the case to the Virginia Parole Board ("VPB") for possible revocation of parole. Miller agreed in writing to abide by the sanctions, which included having "absolutely no contact whatsoever with [Harvey]." (Gaylor Aff. ¶ 8; Chapman Aff. ¶ 5 and Encl. A at 8.) On July 11, 2018, Miller appeared in the General District Court for the City of Lynchburg. At that proceeding, the court took the stalking charge "under advisement with a review date of January 15, 2019."[4] (Gaylor Aff. ¶ 5.)

Miller alleges that, in late July 2018, Gaylor and Layne-Ayers "questioned [him] about Harvey's drug use [and] asked [him] to set her up." (Am. Compl. 5 [ECF No. 11].) Miller claims that he "refused to agree to set her up." (*Id.* at 5-6.) Gaylor denies that she and Layne-Ayers ever tried to encourage contact of any kind between Miller and Harvey. (*See* Gaylor Aff. ¶ 11.)

But Harvey apparently set up Miller. On August 3, 2018, Harvey asked to meet with the probation officers and "reported that she had been in daily contact with Miller." (Gaylor Aff. ¶ 9.) Harvey showed the officers a video she had taken on July 31, depicting her and Miller together at his home.[5]

On August 7, 2018, at 2:47 a.m., Harvey contacted her probation officer, Layne-Ayers, told her that she had just left Miller's home, and spoke to Miller on a three-way call with Layne-

---

[4] Miller states in his verified Amended Complaint that his court appearance occurred on July 9, 2018, and that both the judge and the Commonwealth's Attorney "ordered [Miller] was allowed contact with Harvey since charges were not being pursued." (Am. Compl. 5 [ECF No. 11].)

[5] Notes about this August 3, 2018 meeting indicate that Harvey "did not stay away from [Miller] because she needed him for money and for a place to stay." (Chapman Aff. Encl. B.) She told the officers she "was reporting Mr. Miller because she believed that he was trying to harm her with chemicals." (*Id.*)

Ayers. The probation officer reported overhearing a two-minute phone conversation between Harvey and Miller about items Harvey had left at his residence earlier that night.

The following day—August 8—Gaylor conducted a home visit at Miller's residence and discovered Harvey present there. (*See* Gaylor Aff. ¶ 11.) Based on Miller's repeated contacts with Harvey in violation of the sanctions, a parole-violation warrant was authorized for his arrest under VDOC Operating Procedures. (*Id.* at ¶ 12.) Miller, however, alleges that on August 8, Gaylor and Layne-Ayers brought Harvey to his residence for the sole purpose of establishing contact with Harvey. He further claims that the probation officers sent Harvey into the home; called her on the phone to verify she was there; and then entered the residence with officers to arrest Miller. (Am. Compl. 6 [ECF No. 11].)

Gaylor completed a Major Violation Report stating that Miller had violated the conditions of parole that required him "to follow the Probation and Parole Officer's instructions and . . . be truthful, cooperative, and report as instructed." (Chapman Aff. ¶ 6 Encl. B.) When Gaylor attempted to meet with Miller at the Blue Ridge Regional Jail on August 10 to provide him the Notice of Preliminary Parole Violation Hearing, Miller refused to meet with her. (*See* Gaylor Aff. ¶ 14.)

On October 10, Miller was served with a Notice of his Final Parole Violation Hearing, scheduled for October 17, 2018. (*See gen.* Chapman Aff. Encl. C, ECF No. 41-1.) This Notice advised Miller that, during the hearing, he had a right to appear in person; to present witnesses and documentary evidence; to cross-examine adverse witnesses; to have a written statement of the evidence at issue in considering whether to revoke his parole; and to have an attorney of his choice present or to request an appointed attorney at no cost to him, subject to the

approval of the hearing officer. The Notice further stated that if Miller wished to have counsel appointed for the hearing, he would need to "meet the requirements as determined by the [VPB] for having an attorney appointed." (Chapman Aff. Encl. C.) Miller stated on the Notice form that he did not wish to call any witnesses on his behalf, but he indicated his desire to have counsel appointed and present with him at the hearing. (*Id.*) That same day—October 10—Miller also executed a waiver stating: "I hereby waive the ten-day requirement of receipt of the Notice of Parole Violation Hearing and the Statement of Alleged Parole Violations and elect to proceed with the Parole Violation Hearing this date." (*Id.*)

Miller's Parole Violation Hearing occurred at the jail on October 17. Miller complains that the hearing "was conducted . . . without an attorney to assist [and] against [his] verbal complaint for such." (Am. Compl. 7 [ECF No. 11].) According to Chairman Chapman, Miller "made it clear to the Parole Examiner that legal representation was not needed and that he was prepared to go forward with the hearing that day."[6] (Chapman Aff. ¶ 9.) Gaylor testified at the hearing as to Miller's violations of his parole conditions as she had described them in her written violation report. (*See* Gaylor Aff. ¶ 15.) Miller was also "sworn in and testified at the hearing." (Chapman Aff. ¶ 10.) Based on the testimony at the hearing, the examiner found Miller guilty of violating his parole conditions. The examiner recommended to the VPB that because Miller had failed to take advantage of past opportunities to avoid revocation by complying with Gaylor's instructions to have no contact with Harvey, "additional sanctions were not appropriate." (*Id.* at ¶ 11.) Instead, the examiner recommended that the VPB revoke

---

[6] Defendants' evidence on summary judgment does not include an audio recording or a transcript of the Parole Violation Hearing on October 17, 2018.

Miller's parole. According to Chapman, VPB records reflect that Miller was advised of and afforded all due process protections to which he was entitled during the hearing on October 17. (*See* Chapman Aff. ¶ 12.)

By letter dated November 4, 2018, the VPB notified Miller of its decision to revoke his parole. Specifically, the VPB cited Miller's failure to comply with the sanction imposed after the July 9, 2018 preliminary parole hearing that he have no further contact with Harvey; Harvey's reporting to Layne-Ayers on August 3, 2018, that she had been in daily contact with Miller; Layne-Ayers overhearing a conversation between Harvey and Miller on August 7 about items Harvey had left at his residence that night; and the probation officers finding Harvey at Miller's residence when they conducted a home visit on August 8. (*See gen.* Chapman Aff. ¶ 13 Encl. D.)

Miller states that he wrote several letters to VPB members complaining about various aspects of the revocation process. He asserts that the probation officers wrongfully "punish[ed him] for not setting up Harvey" for drug dealing; that his Final Parole Hearing was conducted without appointment of an attorney to assist him, although he had requested appointment of counsel; and that he wanted to appeal the VPB's revocation decision but did not receive requested information about "Parole Board Grievance Procedure." (Am. Compl. 8 [ECF No. 11].) Miller did not receive any answers to these letters.

Miller then filed this § 1983 action, naming as defendants Gaylor, Layne-Ayers, and individual VPB members. Liberally construed, his Amended Complaint alleges that (1) Gaylor and Layne-Ayers retaliated against him for refusing to set up Harvey, in violation of the First Amendment; (2) Gaylor and Layne-Ayers conducted an illegal seizure of Miller at his home,

in violation of the Fourth Amendment; (3) the VPB Defendants conducted Miller's revocation hearing without appointing him counsel or improperly failed to overturn the revocation for that reason, in violation of his due process rights; and (4) the VPB Defendants' actions caused Miller to be returned to jail confinement that constituted cruel and unusual punishment in violation of the Eighth Amendment.[7] Miller seeks declaratory relief that Defendants violated his constitutional rights and monetary damages. Miller was notified of Defendants' summary judgment motion and he has responded, making the motion ripe for consideration.

## II.     STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could

---

[7] In Miller's unverified Response to Defendants' motion, he alleges additional issues, including: entrapment by Gaylor and Layne-Ayers; failure to serve him with notice of the Preliminary Parole Hearing in August 2018; unspecified equal protection concerns; conspiracy between the probation officers to violate his rights; failure by the hearing officer to hear Miller's arguments or to question Gaylor about telephoning Harvey before the arrest; failure of the VPB members to send Miller appeal paperwork as he had requested by letter; revocation of his parole without conducting a preliminary parole proceeding when Miller had not waived such a proceeding; improper revocation of parole on a technical violation and other parole policy violations; failure by VPB members to respond to Miller's letters; VPB error in failing to review Miller's technical parole violation in six months as required; and unspecified bias by the hearing officer. Miller failed to raise any of these issues in the Amended Complaint or file a motion seeking leave to file a second amended complaint.

  A plaintiff cannot use a summary judgment response to amend or correct a complaint challenged by a defendants' motion for summary judgment. S*ee Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment); *James v. Bailey*, No. 3:15CV519, 2017 WL 193494, at *7 n. 7 (E.D. Va. Jan. 17, 2017), *aff'd*, 694 F. App'x 146 (4th Cir. 2017) ("'[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). "[O]therwise . . . a party could unilaterally amend a complaint at will . . . even without filing an amendment, and simply by raising a point in a brief." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (internal citation omitted)). Because Miller raised the additional issues listed above only in his response to Defendants' motion, rather than in his own pleading or a proper motion seeking amendment of that pleading, the issues are not properly before the court and will not be considered in this case.

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. The plaintiff is entitled to have the credibility of all his evidence presumed. The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials.

*Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).[8]

In support of their motion, Defendants filed supporting affidavits and documentation. Accordingly, to avoid summary judgment, Miller must present sufficient evidence that could carry the burden of proof of his claims at trial. *See id.* He "must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248. A *pro se* litigant's verified complaint must be considered as an affidavit and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

"Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872,

---

[8] The court has omitted internal quotation marks, alterations, footnotes, and/or citations here and throughout this Memorandum Opinion, unless otherwise noted.

875 (4th Cir. 1992). The court's inquiry is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).

### III. DISCUSSION

#### A. First Amendment Retaliation Claim

Miller's first claim alleges that Gaylor and Layne-Ayers pursued a "campaign of harassment to punish [him] for not setting up Harvey." (Am. Compl. ¶ 26 [ECF No. 11].) Miller "feels that[,] due to his refusal to inform on Harvey, Defendants Gaylor and Layne-Ayers in turn retaliated against him and launched a campaign of harassment." (*Id.* at ¶ 14.)

To establish a colorable First Amendment retaliation claim under § 1983, a plaintiff must present facts showing that the plaintiff's exercise of a constitutional right caused the defendants' allegedly retaliatory action. *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("Martin II"); *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) ("Martin I") (noting that, to state First Amendment retaliation claim, the plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between [the plaintiff's] protected activity and the defendant's conduct"). Therefore, to show that Miller's exercise of a constitutional right caused Defendants to take adverse against him in retaliation, he must provide more than "naked allegations of reprisal." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994).

A plaintiff alleging First Amendment retaliation must also establish that the defendant's actions adversely affected his future exercise of his constitutional rights. *Martin I*, 858 F.3d at 249. In this context, to prove an adverse action, Miller must show that Defendants' "allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). Only if he "establishes his protected conduct was a substantial or motivating factor in [Defendants'] decision to take adverse action" are Defendants "tasked with explaining why [their] decision was not animated by retaliatory motive." *Martin II*, 977 F.3d at 301 (holding that the burden of proof shifts to defendant to show "permissible basis" for taking an adverse action only if only if the plaintiff proves protected conduct motivated a defendant's decision regarding the adverse action).

In this case, Miller's factual allegations do not establish a genuine issue of material fact that the probation officers' actions resulting in the revocation of his parole were motivated, in any respect, by his refusal to set up Harvey.[9] On the contrary, the undisputed evidence is that Miller, without any alleged prompting or encouragement from the probation officers, continued having regular contact with Harvey.[10] The officers learned of these contacts from Harvey herself and from the video and telephone conversations that Harvey voluntarily provided to them demonstrating that she had been in contact with Miller at his residence.

---

[9] Miller does not raise any separate § 1983 claim concerning his core allegation that the probation officers attempted to convince him to assist in a set-up of Harvey. Therefore, the court finds no need to analyze this issue as part of this lawsuit.

[10] In her affidavit, Gaylor denies that she or Layne-Ayers encouraged Harvey to have contact with Miller after he agreed not to do so in July 2018. Miller has not offered any sworn testimony to contradict Defendants' evidence that he admitted to having voluntary, continued contacts with Harvey in the late summer of 2018.

- 10 -

Miller's contact with Harvey, actions taken of his own volition and in violation of the agreed-upon July 2018 sanctions, provided a sufficient basis for Gaylor to charge him with violating his parole conditions. Miller's claim that Gaylor was motivated by a desire to punish him for refusing to participate in a sting against Harvey is merely speculation, unsupported by any factual matter whatsoever and insufficient to survive a motion for summary judgment.

Moreover, Miller fails to demonstrate that being charged with a parole violation chilled his ability to exercise any constitutionally protected rights—another required element of a § 1983 retaliation claim. Indeed, his pursuit of this lawsuit is evidence that the revocation did not discourage him from pursuing constitutional claims in court.

Accordingly, the court concludes that Miller has not established any genuine issue of material fact from which a reasonable jury could conclude that the probation officers retaliated against him for the exercise of any constitutionally protected right. Therefore, Defendants are entitled to summary judgment on Miller's retaliation claim.

**B.    Fourth Amendment Claim**

Miller also alleges that, by entering his home to have him arrested on August 8, 2018, Gaylor and Layne-Ayers committed an illegal seizure in violation of his rights under the Fourth Amendment. The court does not agree.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, which ordinarily "requires the police to have probable cause or a warrant before making an arrest." *Herring v. United States*, 555 U.S. 135, 136 (2009). Persons released on parole, such as Miller, however, "do not enjoy the absolute liberty to which every citizen is entitled, but

only . . . conditional liberty properly dependent on observance of special [probation] restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987). "[A] State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 853 (2006). Therefore "probation officers must have reasonable suspicion before seeking the arrest of a probationer for allegedly violating conditions of his probation." *Jones v. Chandrasuwan*, 820 F.3d 685, 693 (4th Cir. 2016). "[R]easonable suspicion in the arrest context is present when there is a sufficiently high probability that a probationer has violated the terms of his probation to make the intrusion on the individual's privacy interest reasonable." *Id.*

The court concludes that under these modified standards, Miller fails to present any genuine issue of material fact that his arrest on August 8, 2018, occurred without reasonable suspicion and in violation of his Fourth Amendment rights. Miller himself alleges that the probation officers did not enter his home or arrest him that day until after they heard from Harvey by telephone that she was present in his home. Harvey's presence there conclusively established Miller's violation of the sanctions from July 2018 and of Gaylor's specific instructions directing Miller to have no contact with Harvey. These circumstances satisfied the reasonable suspicion standard required by *Jones* by creating a "sufficiently high probability" that Miller had violated his parole terms so as "to make the intrusion on [his] privacy interest reasonable." *Id.*

Moreover, the officers had ample evidence of Miller's other past contact with Harvey, separate and apart from the home visit on August 8, 2018, to justify their reasonable suspicion

that Miller had violated Gaylor's instructions and the July 9, 2018 sanctions. On August 3, Harvey reported to the probation officers that she and Miller had been in daily contact for some time. Harvey also showed them a video of Miller and herself in his residence together on July 31. Harvey contacted her probation officer again in the early morning hours of August 7 to report she had just left Miller's residence. Harvey then set up a three-person phone call during which Layne-Ayers overheard Harvey and Miller discussing items Harvey had left at his residence that same night. On this evidence, no reasonable jury could conclude that Miller's arrest was unreasonable under the constitutional standard applicable to parolees. *Jones*, 820 F.3d at 693. Therefore, the court concludes that Defendants are entitled to summary judgment as to Miller's Fourth Amendment claim.

**C.    Due Process Claim**

It is well established that a state inmate has no inherent right under the United States Constitution or federal law to be considered for parole. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). When the sentencing state does grant an inmate release on parole, state officials must provide him minimal due process protections at a hearing before his parole can be revoked, including:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). The record reflects that Defendants afforded Miller these protections in the proceedings leading up to the revocation of his parole. It is undisputed that he received notice of the evidence against him; that the hearing officer was not personally involved in the events from which that evidence arose; that Miller had the opportunity to testify and present witnesses and evidence; that he could cross-examine witnesses against him; and that he received a written statement of the evidence and reasons on which the VPB decided to revoke his parole.

Miller asserts that the failure to provide counsel for him at the Final Parole Hearing violated his constitutional rights. The court does not agree. The Sixth Amendment entitles a *criminal* defendant to the effective assistance of counsel at all critical stages of the prosecution against him. *United States v. Taylor*, 414 F.3d 528, 535 (4th Cir. 2005). The constitutional protections of due process and equal protection also provide a criminal defendant the right to effective assistance on direct appeal, when such an appeal is available by right. *Id.* at 536. A parolee facing possible revocation of his release, however, retains a "more limited due process right" to the assistance of counsel, which must be determined "on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Gagnon v. Scarpelli*, 411 U.S. 778, 789 (1973). In fact, the Supreme Court noted that "the presence and participation of counsel will probably be both undesirable and constitutionally unnecessary in most revocation hearings," but that in certain cases, "fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Id.* But a parolee must be provided counsel at a revocation hearing in limited circumstances, including

> in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Id.* at 790. If the hearing officer refuses such a request for counsel under these circumstances, "the grounds for refusal should be stated succinctly in the record." *Id.* at 791.

Miller did not meet the conditions mandating the appointment of counsel for his revocation hearing. First, although he checked a box stating that he wanted court-appointed counsel and claims to have made a verbal request for appointed counsel, he has not provided any evidence that he sought out or attempted to fulfill the VPB requirements to apply for that service, as required. Second, on the same day that Miller initially signaled his desire for counsel, he also signed a waiver indicating that he was ready to proceed to the revocation hearing although no counsel had been appointed at that time. Third, Miller has not presented evidence indicating that at the October 17 hearing, he provided the decision-making authority with facts in support of a credible or timely claim that he did not commit the charged violations of his release conditions or reasons mitigating against revocation of his parole in light of those violations. Finally, the violations charged against Miller did not involve complex legal issues or factual scenarios that he could not easily present without counsel. To the contrary, the determinative question was quite simple: Did Miller have contact with Harvey despite his probation officer's instructions? And no evidence in the record contradicts Defendants' documentation establishing that Miller had repeated contact with Harvey after agreeing not to

do so as an express condition of his continued parole release in July 2018. Consequently, the court finds no genuine issue of material fact on which Miller could persuade a fact finder that failure to provide appointed counsel for him in the revocation proceedings violated his due process rights under *Gagnon*. Accordingly, the court will grant summary judgment for Defendants on this claim.

### D. Eighth Amendment Claim

Finally, Miller alleges that because he was denied counsel and could not present some unspecified evidence during the parole hearing, purportedly in violation of his due process rights, the decision to revoke his parole and return him to prison, in turn, violated his rights under the Eighth Amendment. The court finds no merit to this claim.

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments," protects inmates from inhumane treatment and conditions during incarceration. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures" to maintain their safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). On the other hand, "the constitutional prohibition against the infliction of cruel and unusual punishment does not mandate comfortable prisons." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). ("[C]onfinement . . . alone," even in highly restrictive, secure conditions, "does not constitute cruel and unusual punishment." *Lawson v. Parks*, No. 7:18CV00650, 2020 WL 534533, at *5 (W.D. Va. Feb. 3, 2020) (citing *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999)). "Only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

Eighth Amendment violation." *Shakka*, 71 F.3d at 166. As such, to demonstrate a deprivation extreme enough to support a claim that an inmate's incarceration conditions violate the Eighth Amendment, he "'must allege a serious or significant physical or emotional injury resulting from the challenged conditions, or demonstrate a substantial risk of such serious harm resulting from the prisoner's exposure to the challenged conditions.'" *Mickell v. Stirling*, No. 6:15-CV-04656-RBH, 2017 WL 626107, at *3 (D.S.C. Feb. 15, 2017), *aff'd*, 698 F. App'x 749 (4th Cir. 2017) (quoting *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)).

Miller fails to identify any aspect of his incarceration that has caused him serious or significant physical or emotional injury. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) ("[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting" from his confinement, or he has not demonstrated being "subjected to cruel and unusual punishment within the meaning of the Amendment"). The court therefore concludes that Defendants are entitled to summary judgment on Miller's Eighth Amendment claim.

## IV. CONCLUSION

For the stated reasons, the court will grant Defendants' Motion for Summary Judgment. The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties

**ENTERED** this 17th day of December, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE